Ross and another vs. Heathcock and others.

*May 13 — June 22, 1881.*

*Mining Rights.*

1. A conveyance, for the purpose of mining thereon, of certain lands described by government subdivisions, "and known as the H. range," *held* not to give the grantees the right to mine upon another government subdivision belonging to the same persons, to which "the H. range" of mineral was afterwards found to extend.
2. The other written instruments in this case (described in the opinion), *held* not to give plaintiffs the right to mine on the tract of land in dispute; and the oral evidence *held* insufficient to establish an oral contract giving them such a right.

APPEALS from the Circuit Court for *Iowa* County.

Action to perpetually enjoin the defendants from mining on a certain range known as the "Heathcock Range," on the northeast quarter of the northwest quarter of section 17, town 5, range 2 east, in Iowa county, and from in any way interfering with the free mining thereon by the plaintiffs. The answer of the defendants denies the plaintiffs' right to mine on said range in the tract above described, and, by way of counterclaim, alleges that the defendants are the absolute owners of said tract, and have the sole right to mine thereon; and that the plaintiffs have worked the said range up to and across the division line between their own land and the said tract, and threaten to follow and continue to work the range

upon that tract; and it prays judgment that plaintiffs be per-petually enjoined from following said range onto said tract.

The evidence given upon the trial will sufficiently appear from the opinion. Certain questions of fact were submitted to a jury impaneled for that purpose. The court filed its findings of fact and conclusions of law, and rendered judg-ment that the plaintiffs were entitled to the exclusive right of mining on the Heathcock Range, in the tract above described, upon the terms and conditions that, and so long as, said plaint-iffs should pay to the defendants, as rents, a certain portion of the ores mined thereon.

The defendants appealed from such judgment. The plaint-iffs appealed from that part thereof which limited their right to mine by the condition of the payment of rents.

For the plaintiffs there were briefs by *Henry & Smith*, *Lanyon & Spensley*, *P. A. Orton* and *Moses M. Strong*, and oral argument by *Mr. Strong* and *Mr. Orton*. They con-tended, among other things, that the contract of July 13, 1859, and the payment of the price therein stipulated, gave to the Linden Company an equitable title to the Heathcock range of ore in the disputed forty-acre tract, and entitle the plaint-iffs, in whom such title is now vested, to maintain this action. In construing this contract, the object will be to discover the intention of the parties expressed therein; and for this pur-pose the court will take into consideration the surrounding circumstances attending its execution. 1 Greenl. on Ev., §§ 277, 287; *Jackson v. Clark*, 7 Johns., 217; *Peck v. Mal-lams*, 10 N. Y., 532; *Pike v. Monroe*, 36 Me., 309; *Brannan v. Mesick*, 10 Cal., 95; *Lane v. Thompson*, 43 N. H., 320; *Smith v. Packhurst*, 3 Atk., 136; Shep. Touch., 253, note 1. It is evident that the interest intended to be conveyed was not the land itself, or its surface, but only the ores beneath the surface, with the right to enter upon the land for the purpose of raising them. The Heathcock range had for a long time been discovered and worked on the lands of the *Heathcocks*,

and no other deposits of mineral had then or have since been discovered on their lands. The Heathcock range was therefore the principal thing sold, and the particular tracts specified were only incidental, expressing the supposition of the parties as to the location of the principal thing. That construction should be given to the contract which will give effect to every part of it. To restrict it to the tracts particularly described, would be to strike from it as meaningless the words, "known as the Heathcock range." These words were evidently used for the purpose of meeting the uncertainty which existed as to the real location of the range, and to show that the range was the thing contracted for. If there is any conflict or uncertainty in the description, it will be construed most strongly against the grantor. 3 Washb. R. P. (4th ed.), 397 (* 628); 4 Bacon's Abr., 526; *Pike v. Monroe*, 36 Me., 309; *Ganley v. Looney*, 100 Mass., 359; *Vance v. Fore*, 24 Cal., 435. Where there is a general description of the thing intended to be conveyed, in connection with a more particular description, it is settled that the latter will be held to express the intent of the parties. 10 Met., 250. In this case the description, "the Heathcock range," could not be more certain and particular, and it should prevail over an attempted description of the range as the ores in certain described tracts of land. A river, a lake or an island cannot be better described than by a reference to it by name. In such cases, the adding of metes and bounds would introduce uncertainty into the description; for, as in this case, the metes and bounds given may not be accurate. *Lodge's Lessee v. Lee*, 6 Cranch, 237; *Jones v. Smith*, 73 N. Y., 209; *Bates v. Bower*, 17 Mo., 550; *Haley v. Amestoy*, 44 Cal., 132. See also *Worthington v. Hylyer*, 4 Mass., 196; *Smith v. Strong*, 14 Pick., 128; *Whiting v. Dewey*, 15 id., 428; *Winn v. Cabot*, 18 id., 553; *Tenny v. Beard*, 5 N. H., 58; *Spiller v. Scribner*, 36 Vt., 245; *Abbott v. Pike*, 33 Me., 204; *Myers v. Ladd*, 26 Ill., 415; *Child v. Ficket*, 4 Me., 471; *Rutherford v. Tracy*, 48 Mo., 325; *Wade v. Deray*, 50 Cal.,

376; *Raymond v. Coffey,* 5 Oreg., 132; *Andrews v. Pearson,* 68 Me., 19.    The words "known as" have no restrictive effect. *Kneeland v. Van Valkenburgh,* 46 Wis., 434.

For the defendants there were briefs by *Wilson & McIlhon, J. W. Taylor* and *Barber & Clementson,* and oral argument by *Mr. Wilson* and *Mr. Clementson.*

COLE, C. J.    These are cross appeals from portions of the same judgment.    The important and controlling question arising on both appeals relates to the plaintiffs' claim to follow or mine upon the "Heathcock range," as it is called, on the N. E. ¼ of the N. W. ¼ of section 17.    The learned circuit court affirmed their exclusive right to mine upon that range on this forty-acre tract, and enjoined the defendants from mining on the same, or from interfering in any manner with the plaintiffs while in the exercise of that right, so long as they should pay the rent specified in the judgment.    The correctness of this decision is the matter to be considered.

The first inquiry will be directed to the plaintiffs' right thus to mine on this tract, as based on or established by the documentary evidence offered on the trial.    One of the learned counsel, in an able argument which he addressed us on this point, insisted that the paper title of the plaintiffs, as shown upon the trial, established in them a perfect equitable title, with the exclusive right of possession, and the right to have vested in them the legal title, as against the defendants, to the Heathcock range on this disputed tract.    It will be most favorable to the plaintiffs' case to assume, as we shall do without discussion, that all the right to work or mine this range on this tract, which the defendants by any contract, either oral or written, gave to any party under whom the plaintiffs claim, has become vested in them.    It may as well be remarked here as anywhere, that it appears that one Michael Poad owned an undivided one-third of all the ores in the N. W. ¼ of the N. E. ¼ of section 17, the S. W. ¼ of the S. E. ¼, the S. E. ¼ of the

Ross and another vs. Heathcock and others.

S. W. ¼, and about 26 acres on the east side of the S. W. ¼ of the S. W. ¼ of section 8 — all the above lands being in town 5, range 2 E.; also he may have had an interest in the ores in the disputed tract; and while he did not sign some of the contracts which were executed by the *Heathcocks,* no question is made but that he is equally bound with them in any transfer or sale of the right to mine upon these tracts. We do not deem it material to inquire as to who was the real legal or equitable owner of any of the lands, as it is only the right to mine upon the same with which we are concerned.

The first instrument relied on by the plaintiffs to establish their right to mine on the Heathcock range on the disputed tract, is the written lease bearing date July 21, 1853, made and entered into between the defendants *Heathcock* of the first part, and Bracken and Vivian of the second part. By this lease, in consideration that Bracken and Vivian and their assigns would perform certain conditions named and pay the mineral rents covenanted to be paid, the *Heathcocks* demised and granted to them for the term of twenty-one years, with a covenant to renew for another like term at the election of the lessees, "for the uses and purposes of digging and mining for copper, lead and other ores, and for any and all other purposes incident to mining and smelting or manufacturing any of said ores," the lands therein specified, describing them by government subdivisions. The lease does not include the disputed forty. At the time this lease was given, it appears that a range of mineral had been discovered and worked in many places to the water, the west end of which, so far as developed, was in the S. W. ¼ of the S. W. ¼ of section 8, near the north line of the said quarter-quarter section, and the lineal course of the said range was easterly, bearing to the south, and running in a curvilinear direction south of east entirely across the S. E. ¼ of the S. W. ¼ of section 8, crossing the east line thereof near the center of it, and running into the S. W. ¼ of

the S. E. ¼ of section 8, and into the N. W. ¼ of the N. E. ¼ of section 17; but it had not been worked or traced into the disputed forty. The Linden Mining & Smelting Company was organized, which entered into the possession of the lands under this lease; commenced and prosecuted extensive mining operations thereon, by putting on machinery for drawing off or removing the water from the range below the second layer of magnesian limestone; took out a large quantity of ore; and paid the mineral rent agreed to be paid the lessors.

On the first of January, 1855, what is known as the "water-wheel lease" was executed, in and by which the *Heathcocks* gave the company the right and privilege of digging, "constructing and maintaining a dam, open cut, water-table, or watercourse, through so much and such portion of the N. E. ¼ of the N. W. ¼ of section 17 . . . as may be necessary to direct and change the course of the branch, stream or rivulet now running and passing through the above-described land, so as to enable the" company to propel and supply with water and operate a water-wheel, etc. There is no right given to mine upon the above tract in this lease, and it is not seriously claimed that any such right was granted by it. The next instrument was the adit lease of June 5, 1857, wherein the *Heathcocks* granted the company the right or privilege of running or keeping open an adit or level on the disputed forty, "commencing where the present adit is opened on the west side of the tail-race, and running up the bottom towards the Heathcock range;" also the right and privilege of sinking the necessary shafts to run said adit or level, and of following and digging after any mineral that the company might discover in running said adit, or sinking said shafts, "*but not to follow such mineral further east than where said adit or level commences,*" on condition that the company paid the rents specified therein. In the original complaint the right to follow and mine upon the Heathcock range on the disputed forty

was based entirely upon this lease, and in the amended complaint the same claim is asserted, founded on this lease and other grounds.

On the 13th day of July, 1859, the *Heathcocks* entered into a contract to convey to the company all their right, title and interest in and to the following tracts, described as the S. W. ¼ of the S. W. ¼, the S. E. ¼ of the S. W. ¼, and the S. W. ¼ of the S. E. ¼ of section 8, the N. W. ¼ of the N. E. ¼ of section 17, being in town No. 5, etc., "*and known as the Heathcock range*," to have and to hold the above premises for the uses and purposes of mining and digging for lead, etc., and for any and all other purposes incident to mining and smelting said ores, upon condition that the company pay, on or before the first day of January following, the sum of $14,000. On the 17th of December thereafter a deed was executed under this agreement by the *Heathcocks*, conveying, for $12,000, the undivided two-thirds of all mines and ores in certain tracts, which, with two exceptions, are described according to the government subdivisions, omitting the disputed forty and not in terms conveying what is "known as the Heathcock range."

This is the substance of the various written instruments constituting the documentary evidence which is relied on to show that the defendants have granted the right to mine the Heathcock range on the disputed forty to parties under whom the plaintiffs claim; and the question is, Do they sustain the position of the learned counsel on this branch of the case? It seems to us they do not. It will be noticed that wherever the right to dig or mine upon this disputed forty is expressly given, that right is clearly restricted and defined. The water-wheel lease plainly states the privilege intended to be granted by it. No privilege to mine is there given. The object of the adit lease is just as plainly stated; and while it grants the right to mine upon that forty, yet that right is restricted in terms to the privilege of following such mineral as might be discovered in mining the adit or sinking the shafts, upon ground west of

the point where the adit commenced.    It is said it was not the object of the restrictive language in the lease — " not to follow such mineral further east than where said adit commences," etc.— to prohibit the company from following the Heathcock range into this tract from the north or east sides thereof, should the range be traced into the tract from either direction. But that view is so utterly at variance with the plain intent and meaning of the instrument, that it seems to us it cannot for a moment be entertained.    There is no ambiguity in the language used — no uncertainty as to the privilege granted or right denied; and to hold, in view of the restrictive clause, that the lease gave the company the right to follow the Heathcock range onto the disputed forty from an adjoining forty on the north or east, is a construction wholly unwarranted.    We therefore feel justified in assuming that if the right is given by any written contract to follow the Heathcock range onto this forty, it must be found in some other instrument executed by the defendants.

This brings us to the contract of July, 1859, upon which the learned counsel mainly relies to maintain that right.    The first remark which we make on this contract is, that the disputed forty is entirely omitted from it.    For a consideration named, the defendants agreed to convey to the company, for the purpose of mining and digging for mineral thereon, certain described tracts of land.    After the tracts are described by government subdivisions, the words " and known as the Heathcock range " are added.    The learned counsel says these words do not restrict the lands to be conveyed to so much of that which is known as the Heathcock range as fulfils the other conditions of the description; in other words, that if the Heathcock range was subsequently traced or developed on other lands owned by the defendants than those described in the contract, the defendants bound themselves to convey such lands, or allow the company to mine such range on them free from rent.    We are unable to concur in that view.    There is

really no difficulty in ascertaining the lands which the defend-ants agreed to convey by the contract. The description by government subdivisions renders it perfectly clear and certain what they were. Nor is there any necessity for rejecting anything in the descriptive part of the contract. The Heath-cock range, as it was then known, existed on the precise par-cels agreed to be conveyed. There is, therefore, nothing in-consistent in the description, nothing repugnant in the several particulars included in such description, which must be re-jected. Full effect will be given to every part of the contract when the tracts described are conveyed, upon which the Heath-cock range, as it had then been worked and developed, existed. The parts of the description are consistent, and there is really no room for interpretation or construction in order to ascer-tain what lands the parties intended to give the right of min-ing upon.

But it is said that if the contract is read, as it should be, in the light of surrounding circumstances, it will be seen that the parties intended by the contract on the one hand to sell and on the other to purchase, the Heathcock range wherever it might run on the defendants' lands, and not simply the mineral ores within the particular tracts of land described in the contract; that the principal thing sold, the real subject matter of the contract, was the Heathcock range, and that the lands specified were those upon which the range was sup-posed by the parties to be located. The rule is elementary, that a written contract " may be read by the light of surround-ing circumstances in order more perfectly to understand the intent and meaning of the parties; but as they have consti-tuted the writing to be the only outward and visible expres-sion of their meaning, *no other words* are to be added to it or substituted in its stead. The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contradistinguished from what their words express, but

what is the meaning of words they have used." 1 Greenl. Ev., § 277.

Bearing in mind this familiar rule in construing this contract, we are unable to say that the defendants are bound by its terms to convey any land not mentioned in it, even though the Heathcock range may run thereon; for they did not agree to convey all the lands owned by them upon which that range should be traced, but only the specific tracts mentioned. It seems to us plain that this is the extent of their obligation. Certainly the fact is established by abundant proof, that when the contract and deed of December, 1859, were executed, no one supposed that the Heathcock range would be traced onto the disputed forty. And it is frankly admitted that at this time all were mistaken as to its course; that it is so very peculiar and eccentric in its formation that no one expected it would enter this tract until years after all the contracts relating to the mining right were made. But still this fact cannot essentially affect the question as to the proper meaning of these contracts. They must be construed according to the language used, and by that language it is obvious to our minds that the defendants only engaged to convey what in fact they did convey, the right to mine upon certain specified tracts of land upon which the Heathcock range was known to exist, and no other. If other ranges or crevices of mineral besides the Heathcock range shall be discovered on these lands, the plaintiffs will have the undoubted right to all the mineral therein, because they have not alone purchased the Heathcock range thereon, but all other ranges. But we think we should be doing great violence to the language used, were we to hold that the words " known as the Heathcock range " so enlarged the grant as to give the plaintiffs the right to follow that range on the disputed forty.

There is an averment in the amended complaint that this forty, through some inadvertence or mistake, was omitted

from the contract in question; but the evidence is perfectly clear and decisive that it never was intended to be embraced therein. Certainly there is no ground for claiming that in reducing the contract to writing the parties failed to include this tract with the other tracts upon which the right to mine was given; for it appears there was no intention to include it specifically in the contract. Unless the language, "Heathcock range," covered it, it was surely no part of the thing granted in this contract. But, for reasons already given, we think those words gave no right to mine on any tracts not described in the instrument. Really, the only mistake which is shown to have existed when the contract was made, was as to the course of the Heathcock range. In regard to that matter all parties confessedly were mistaken; but they had equal opportunities for ascertaining the facts, and the same means of information for forming a judgment as to its probable direction. If in working the range it has been found to enter a tract which no one, until shortly before this suit was commenced, supposed it would enter, and on which only a restricted right was given by the written agreements, this furnishes no reason for reforming the contract on the ground of mistake. The plaintiffs are not disturbed in the enjoyment of any mining right which they acquired by the written contracts; they have the right to mine upon all the tracts described, and therefore show no legal or equitable right to follow the Heathcock range on a forty not embraced in their contract or deed. This is all we deem it necessary to say in respect to the plaintiff's right to mine on the disputed forty as founded on the paper title.

But in the amended complaint it is alleged, that, some time in the summer of 1854, the defendants, for the consideration of $6,000, by either a verbal or written contract, gave the Linden company the right of following, digging, raising and removing all ores which might be found in the Heathcock range, or pertain thereto, wheresoever such might be, on any land owned by them or either of them. The learned circuit court

found that such a contract was made, by which the defendants and Poad sold to Bracken and Vivian, and their assigns, as a distinct property interest, separate from the ownership of the land, and separate from the mineral rent to be paid them as owners of the land, the exclusive right to work the Heathcock range or to mine thereon to the full extent that the vendors had the right to pursue and work the same at the time of sale. A very able and elaborate argument was made by one of the plaintiffs' counsel in support of this finding of the court below. We have carefully examined all of the evidence contained in the two printed cases furnished, and fail to find the proof of such a contract of sale. We have already referred to all the documentary evidence introduced on the trial, which relates to the mining right sold or granted by the defendants. It is needless to remark that this new and distinct contract is not contained in any of it. Nor does it appear that any written contract entered into between the parties, relating to the sale of the Heathcock range, or the right to mine on the same, has been lost. Notwithstanding this documentary evidence, which shows that the parties entered into several written contracts, in which their rights and obligations were clearly defined and limited — contracts, too, about this very subject matter of mining on the defendants' lands,— still it is not impossible that the parties made some other agreement in regard to the sale of the Heathcock range, distinct and independent from these contracts; though, under the circumstances, the presumption is very strong against their having made any such agreement. At all events, the burden was upon the plaintiffs to show, by clear and satisfactory evidence, that such an agreement was actually made, and its terms and conditions. Have they done this? It seems to us they have not.

The court below distinctly negatived the plaintiffs' right to follow the Heathcock range on the disputed forty, either under the adit lease, the contract of July 13, 1859, or the deed of December, 1859; but did find as a fact established by the

evidence, that the defendants and Poad, in consideration of $6,000 in money or its equivalent, sold to the company the exclusive right to work that range to the full extent that the vendors had the right to pursue and work it at the time of sale. We have carefully examined the testimony for the proof which will support this finding. Of course, the existence of such a contract of sale must be shown by competent and sufficient testimony. It cannot be inferred from mere vague, doubtful and ambiguous declarations or circumstances which do not amount to positive proof of an express contract. There is certainly testimony in the case which shows that the defendants and Poad were paid $6,000 for something, mostly in stock of the company. But what this money and stock were paid for does not clearly appear. There is evidence that it was given as a bonus for the Bracken and Vivian lease. That lease refers to a certain bond bearing even date therewith, the condition of which the obligors bound themselves to keep and perform. The bond is lost. No one is able to state what its real condition was — whether it was for the payment of money, or for doing other things. There is likewise evidence of admissions made by the defendants to the effect that the company had the right to follow their mineral or range on any land owned by them. We shall not attempt to discuss the oral testimony which is relied on for the purpose of proving that the defendants, for a valuable consideration, sold by a verbal agreement — independent of the written contracts — the right to work the Heathcock range wheresoëver the same might run on any land owned by them. It seems to us that all the evidence bearing upon that point is entirely inadequate and insufficient to justify the inference that such a verbal agreement was made. We have already referred to the strong presumption arising from the written contracts against the existence of such a verbal agreement. It appears that the parties deliberately put their other engagements and contracts in writing. It is difficult to believe that they would allow so

important an agreement respecting a mining right sold and purchased to rest in parol. Besides, no witness could testify that the parties ever actually entered into such an agreement, or could state its conditions and when it was made. The loose and inconsiderate admissions proven, and the probabilities arising from the conduct of the parties, which are relied upon to establish the contract, we deem insufficient to prove its existence. It is true, the jury, to whom the question was submitted, distinctly found a sale of the right to work the Heathcock range, as claimed, and the court affirmed the correctness of the verdict in that particular, as we have said. And the learned and able counsel for the plaintiffs, on this branch of the case, invoked the aid of the well-settled rule that this court will not disturb a verdict of the jury or the finding of a court on a question of fact, except where the preponderance of evidence is most clearly against it. We do not intend to come in conflict with that rule. This is an equity case, and this court must review the evidence and determine what facts it establishes. But were the case one at law, we should feel constrained to say that there was no sufficient evidence of such a contract to warrant the verdict of the jury. The circumstances, admissions, and all matters relied on to prove the sale and purchase of such a valuable mining right, in our opinion, fall far short of the degree or quantity of evidence essential to warrant an inference that it was made.

The court also submitted this question to the jury, to wit: "If the owner of a discovery right, or right to work a mine or range of mineral, sells his working right for a valuable consideration to the entire range, as far as the seller has the right to pursue and work the mine, agreeably to the custom of miners in this section of the country in force at the time of sale, say in 1853 or 1854, can the seller, under any pretext, set up a valid claim to work any portion of the range by him sold, against the will of the purchaser or his assigns, their working right acquired by the purchase not having been forfeited?"

The jury answered this question in the negative. There was considerable testimony taken in regard to the custom and usages of miners, but we think neither such testimony nor the above question was pertinent to the case. We have said that in our judgment there was no evidence which would justify a jury in finding that the defendants, for a valuable consideration, sold the working right to the entire Heathcock range, wheresoever it might run on lands owned by them. What was sold was the right to and interest in all the ores and minerals on certain specified tracts of lands, together with the right of digging and working on such lands for mining purposes. The Heathcock range, as far as the defendants had the right to work it, was not the thing sold and purchased. The right to work that range on the specified tracts was sold, but not the right to follow it upon land not embraced in the contract. Consequently, we deem the question inapplicable to the case on trial. We decide nothing as to the effect of an established mining custom on such a hypothetical case as that stated in the question.

Without further remarks, we will say, the conclusion which we have reached is, that that portion of the judgment appealed from by the defendants must be reversed, and the cause be remanded with directions to dismiss the complaint.

This view necessarily disposes of the appeal of the plaintiffs, since the very foundation of that portion of the judgment which they appeal from, is gone or destroyed; for really the vital parts of the judgment are reversed on the defendants appeal. And because there is nothing left for the plaintiffs' appeal to operate on, it must be dismissed.

*By the Court.* — It is so ordered.